**TELEPROMPTER CABLE COMMUNI-CATIONS CORPORATION, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COM-MISSION and United States of America, Respondents,**

**Washoe Empire, etc., Nevada Radio-Television, Inc., Intervenors.**

**No. 75–1563.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1976.

Decided Sept. 19, 1977.

---

Jay E. Ricks, Washington, D. C., with whom Gardner F. Gillespie, Washington, D. C., was on the brief for petitioner.

James F. Ponsoldt, Atty., Dept. of Justice, Washington, D. C., with whom Barry Grossman, Atty., Dept. of Justice, Washington, D. C., was on the brief for respondent United States. Howard E. Shapiro, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for respondent United States.

Jack David Smith, Counsel, F. C. C., Washington, D. C., was on the brief for respondent F. C. C.; Ashton R. Hardy, Gen. Counsel, F. C. C., Daniel M. Armstrong, Associate Gen. Counsel and David L. Kuhns, Counsel, F. C. C., Washington, D. C., were on the brief for respondent F. C. C.

Howard M. Liberman, Washington, D. C., with whom Robert B. Jacobi, Edgar F. Czarra, Jr., and Michael S. Horne, Washington, D. C., were on the brief for intervenors.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

Opinion for the Court filed by ROBB, Circuit Judge.

ROBB, Circuit Judge.

This is a petition for review of orders of the Federal Communications Commission refusing to authorize the carriage of the signals of certain Los Angeles, California television stations on the petitioner's cable television systems at Reno-Sparks, Nevada. We reverse.

On October 25, 1966 Community Antenna Company, the predecessor of our petitioner Teleprompter Cable Communications Corporation, notified the Federal Communications Commission that it intended to begin carrying the signals of four Los Angeles non-network television stations on its Reno-Sparks, Nevada community antenna (CATV) systems. On November 22, 1966 Washoe Empire, licensee of television station KTVN in Reno, filed a petition for special relief under what was then section 74.1109 of the Commission's rules, requesting that the Commission either defer authorization of the Los Angeles signals until a reasonable time after KTVN commenced operations, or set the matter for hearing.

In 1966 it was the position of the Commission that importation of distant television signals in the 100 largest markets should be limited, so as to encourage the growth of non-network television stations. Accordingly the importation of distant signals into a "top 100 market" was not permitted unless the Commission made a posi-

tive determination that it would be consistent with the public interest. 31 Fed.Reg. § 4572 (1966). In contrast CATV systems proposing service in markets below the top 100 were generally free to proceed, after notice to local stations and without awaiting a hearing. An affected station might present a petition for special relief under section 74.1109 of the Commission's rules. 31 Fed.Reg. § 4572 (1966). The rule placed upon the petitioner the burden of stating facts to demonstrate both the need for the requested relief and that granting it would serve the public interest. *Pikes Peak Broadcasting Co. v. F. C. C.*, 137 U.S.App. D.C. 234, 237–39, 422 F.2d 671, 674–75, *cert. denied*, 395 U.S. 979, 89 S.Ct. 2134, 23 L.Ed.2d 767 (1969). Because Reno-Sparks was and has always been a smaller television market the rule imposed this burden on Washoe Empire.

On April 4, 1967 the Commission denied Washoe Empire's petition for special relief and authorized carriage of the Los Angeles signals on the Reno-Sparks cable system. *Community Antenna Co.*, 7 F.C.C.2d 617 (1967) (Community 67). The Commission referred to its policy judgment in its *Second Report and Order*, 2 F.C.C.2d 725 (1966), that the need for limiting cable operations in television markets below the top 100 was not as great as it was in the case of the top 100 markets; and the Commission held that Washoe Empire had not sufficiently documented its argument that Community's proposed additional signals would threaten the continued operation of Washoe Empire's station. Accordingly, the Commission authorized Community's proposed operations as consistent with the public interest. No stay of the Commission's decision was requested or granted.

Although the Commission on April 4, 1967 authorized Community to carry the four Los Angeles signals, carriage of those signals in the Reno-Sparks area depended upon the Commission's approval of microwave relay service to the area. At the time of the Commission's decision in Community 67 an application by TransAmerican Microwave, Inc., a common carrier, for authority

to deliver the signals to Reno-Sparks by microwave, was pending before the Commission. Subsequently two other mutually exclusive microwave applications by common carriers were filed.

On November 9, 1966 Circle L, Inc., the licensee of Reno television station KCRL–TV filed a petition to deny TransAmerican's application. 47 U.S.C. § 309(d). The petition to deny included a study by Dr. Martin H. Seiden which focused on the impact that the Los Angeles signals would have on KCRL if they were carried on the Reno-Sparks cable system. Subsequently, on May 4, 1967 Circle L, Inc. filed a petition asking the Commission to reconsider and set aside the Community 67 decision of April 4, 1967. The Circle L petition requested the Commission to consolidate for consideration all pending pleadings relating to the impact of the proposed importation of the four Los Angeles signals, and to consider in particular the report of Dr. Seiden. Circle L relied upon the Seiden report as evidence of the injury to the Circle L station that would result from granting the authority sought by Community. On May 5, 1967, one day after the statutory deadline for filing, Washoe Empire filed its petition for reconsideration in the Community case.

The petitions for reconsideration of the April 1967 Community decision remained pending before the Commission until 1974. In the interim, however, on December 12, 1968 the Commission gave notice of a rulemaking proceeding in which it proposed to limit CATV systems in a smaller television market to carriage of only those distant signals necessary to bring to the systems' subscribers the signals of three full network stations and one independent station. *Notice of Proposed Rulemaking and*

*Notice of Inquiry*, Docket 18397, 15 F.C. C.2d 417, 440 (Dec. 12, 1968). On February 3, 1972 the Commission adopted this proposed rule for smaller television markets. *Cable Television Report and Order*, 36 F.C. C.2d 143, 177 (1972); *see* 47 C.F.R. § 76.59. Thus the Commission retreated from the liberal distant signal policy for smaller television markets reflected in the 1966 rules. Moreover the new rule placed on the cable operator seeking an exception to the limitation on distant signals the burden of showing that carriage of more than one independent signal would serve the public interest. Under the 1966 rule, as we have said, an objecting station filing a petition for special relief had the burden of showing that the relief was needed and in the public interest. However, the 1972 rule contained a "grandfathering" provision, that it "shall not be deemed to require the deletion of any television broadcast or translator signals which a cable television system was authorized to carry or was lawfully carrying prior to March 31, 1972 . . . ." 47 C.F.R. § 76.-65.

Teleprompter, the successor of Community, took the position that the "grandfathering" provision applied to it, because the Commission on April 4, 1967 denied Washoe Empire's petition for relief and by its order specifically "authorized [Teleprompter] to operate its Reno and Sparks, Nevada, CATV systems as proposed in its section 74.1105 notification of October 20, 1966." *Memorandum Opinion and Order*, FCC 67–398 (J.A. 77, 78). Accordingly, on May 9, 1972 Teleprompter filed applications for certificates of compliance under the Commission's new rules.[1] Circle L and Washoe Empire filed oppositions to the applications.

On June 13, 1974 the Commission granted the Washoe Empire[2] and Circle L petitions for reconsideration of the Community 67

1. A certificate of compliance under the Commission's rules certifies that the applicant's proposed operations comply with the Commission's regulations. *See Warren Cable TV, Inc.*, 47 F.C.C.2d 955 (1974); *Cable Television Report and Order, supra*, 36 F.C.C.2d 185, 186; 47 C.F.R. § 76.11(a).

2. The Commission said: "The petition of Washoe Empire was filed after the period for filing petitions for reconsideration had run and [Community] correctly moved to dismiss. However, Washoe Empire's petition is substantially the same as the timely petition of Circle L, and we do not believe the interests of any party would be prejudiced by considering both petitions at this time." 47 F.C.C.2d 319, n. 3.

decision, reversed that decision, withdrew the authorization granted Community in 1967, and denied Teleprompter's applications for certificates of compliance. *In Re Applications of Community Antenna Co.,* 47 F.C.C.2d 318 (1974) (Community 74). Reconsideration was denied April 8, 1975. *In Re Applications of Community Antenna Co.,* 52 F.C.C.2d 165 (1975) (Community 75).

In its opinions in Community 74 and Community 75 the Commission recognized that "[s]ince no stay of the Commission's decision [in Community 67] was requested, the Los Angeles signals became authorized for carriage on the cable television systems at Reno and Sparks." 47 F.C.C.2d 319 (1974). The Commission thought however that the authorization was never "finalized" because petitions for reconsideration were pending and because the Commission in *Brentwood Co.,* 21 R.R.2d 775 (1971), a case involving the microwave applications, had announced that consideration of the petitions would be deferred pending consideration of a proposed new rule for smaller television markets. 47 F.C.C.2d 320. Having thus disposed of the 1967 authorization the Commission applied the new 1972 smaller market carriage rules to Teleprompter's application. In so doing the Commission did not act on the basis of a petition for special relief, but ruled on the 1967 petitions for reconsideration. "The evidence submitted persuades us that our decision in *Community Antenna Co., supra,* should be reconsidered." 47 F.C.C.2d 321. Its action in 1967, said the Commission, was without the benefit of the Seiden report. The Commission conceded that the data contained in that report, prepared in February 1966, were "now stale" but nevertheless it concluded on the basis of its "experience" and the "general propositions which we propounded in the *Cable Television Report and Order*" of 1972 that "it would not be in the public interest" to permit the carriage of the four Los Angeles signals on the Reno-Sparks cable television systems. 47 F.C.C.2d 322, 323.

On this petition for review Teleprompter argues that the Commission acted arbitrarily and abused its discretion in revoking Teleprompter's right to carry the Los Angeles television signals, a right granted seven years earlier. Moreover, says Teleprompter, the Commission abused its discretion and violated due process by shifting the burden of proof from those seeking special relief to Teleprompter. The Department of Justice, representing the United States as a statutory respondent, takes the position that the Commission's decision revoking Teleprompter's authority is in conflict with the Communications Act and with the Commission's own rules and should be reversed. Washoe Empire and Nevada-Radio Television, Inc., intervenors, support the Commission's decision.

■ The grandfather clause of the 1972 cable television rules provides that the new limitations on the importation of distant signals "shall not be deemed to require the deletion of any television broadcast or translator signals which a cable television system was authorized to carry or was lawfully carrying prior to March 31, 1972 . ." 47 C.F.R. § 76.65. The Commission could have made this rule conditional, or adopted another rule providing that any authorization subject to a pending petition for reconsideration did not qualify for grandfathering; but the Commission did not do this. Counsel for the Commission in their brief (P. 14) suggest that language in the *Cable Television Report and Order* of February 3, 1972, 36 F.C.C.2d 143 (1972), qualifies the grandfathering proviso, but we do not agree. The language relied upon appears in section 114(G) of the Report, dealing with pending cases, and states: "Petitions seeking reconsideration or stay of prior Commission actions: These petitions will remain on file. Their disposition will depend on the particulars of each case." 36 F.C.C.2d 188. The grandfather status of Teleprompter's authorization is plainly one of the "particulars" of this case.

We conclude that the critical issue in this case is whether Teleprompter was "authorized to carry" the four Los Angeles signals within the meaning of 47 C.F.R. § 76.65. If it was, that authorization could be revoked,

under the Commission's 1972 cable television rules, only in response to a petition for special relief, 47 C.F.R. § 76.7; and in that case the petition would have the burden of proof.

■ There can be no question, and indeed the Commission concedes, that its 1967 decision authorized Teleprompter to carry the four Los Angeles signals. The Commission's theory is that the filing of petitions for reconsideration vitiated that authorization. We hold that this theory cannot be reconciled with the Communications Act, and the Commission's own rules and pronouncements.

Section 405 of the Communications Act, 47 U.S.C. § 405 provides that the filing of a petition for reconsideration does not, of itself, vitiate any authorization granted in the original Commission approval. It provides that the filing of a petition for rehearing does "not operate in any manner to stay or postpone the enforcement" of "any order, decision, report, or action of the Commission" in the absence of a "special order of the Commission." Tracking this statute, section 1.106(n) of the Commission's rules, 47 C.F.R. § 1.106(n) provides: "Without special order of the Commission, the filing of a petition for reconsideration shall not . . . operate in any manner to stay or postpone the enforcement [of a Commission decision]." The Commission has issued no order staying the effect of its 1967 authorization to Teleprompter to import the Los Angeles signals. Therefore, under the provisions of the statute and the Commission's own rule Teleprompter was "authorized to carry" those signals within the meaning of the grandfather provision of the Commission's cable rules, notwithstanding the pendency of a petition for reconsideration.

In *Paxton Community Antenna System, Inc.*, 52 F.C.C.2d 568 (1975), Paxton, on May 31, 1974, applied for a certificate of compliance to add three television broadcast signals to its existing cable television system. The signals had never been carried but carriage had been authorized in 1968. Paxton averred that authority to carry the signals was grandfathered pursuant to section 76.-65 of the Commission's rules. Objections to Paxton's application for a certificate of compliance were filed, upon the ground that the 1968 decision was not final, petitions for reconsideration and stay having been filed. The objectors argued "that these filings kept the initial decision from becoming final and, in effect, reinstated the *status quo* as it existed prior to the decision". 52 F.C.C.2d 569. Paxton, in response, relied upon section 1.106(n) of the Commission's rules. The Commission agreed with Paxton saying:

. . . We must reject the contention that the filing of a petition for reconsideration or a motion for stay automatically stays the effect of a Commission decision. Section 1.106(n) of the Rules states:

Without special order of the Commission, the filing of a petition for reconsideration shall not . . . operate in any manner to stay or postpone the enforcement [of a Commission decision]

Contrary to the assertion of Plains Television Corporation, a literal reading of the above Rule does not make the rehearing process a nullity. The purpose of the Rule is to give some degree of finality to Commission decisions, but at the same time to provide a mechanism to delay a decision's effectiveness in the unusual situation where such action is warranted. In the instant case, no special order of the Commission was issued and therefore the petitions for reconsideration and stay did not stay or postpone the effectiveness of the 1968 decision which authorized the subject signals at that time.

52 F.C.C.2d at 569.

This decision was rendered April 17, 1975, nine days after the Commission's final rejection of Teleprompter's application in Community 75, 52 F.C.C.2d 165, April 8, 1975. The Commission reached a similar result in *Cable Information Services, Inc.*, 49 F.C.C.2d 467 (1974). The Commission attempts to distinguish the *Paxton* and *Cable Information* cases on their facts but it is plain to us that their rationale applies to the authorization granted Community in 1967.

In summary, the Communications Act and the Commission's rules and decisions plainly specify that Community's authority to carry the requested signals was in no way undermined by the pending petitions for reconsideration. This being so any challenge to that authorization must be by way of a petition for special relief, a proceeding in which the movant has the burden of proof. However the Commission did not place that burden on the protesting stations; it acknowledged that "[t]he *Community 74* decision did not grant to the broadcast stations special relief from our Rules but in fact applied our smaller market carriage rules to the Reno, Nevada smaller market". *Community 75*, 52 F.C.C.2d at 168. This the Commission undertook to do on the basis of its "experience" and the evidence "introduced by the parties" which the Commission conceded was "now stale", *Community 74*, 47 F.C.C.2d 322, 323. On this basis the Commission concluded that the carriage of the requested signals on the Reno-Sparks system "would not be in the public interest". 47 F.C.C.2d 322, 323.

We need not labor the elementary principle that an administrative agency is bound to adhere to its own rules and procedures. In violation of that principle the Commission has disregarded the plain meaning of the grandfathering provision of its 1972 rule, a meaning established by the Communications Act and by the Commission's own rules and its decisions in other cases. In effect the Commission holds that the grandfathering provision does not mean what it says because in this case the Commission thinks that the "public interest" requires a different interpretation. We conclude that the Commission's ruling is unwarranted and arbitrary. The Commission's notion of the public interest cannot justify its failure to abide by its own rules and to act in a manner consistent with its own precedents.

The Commission's orders denying Teleprompter's application for a certificate of compliance and revoking its authority to import the Los Angeles signals are reversed. The case is remanded to the Commission with instructions to grant the requested certificates of compliance. Protesting broadcast stations will of course not be foreclosed from filing petitions for special relief in which they may attempt to show that importation of the requested signals would not in fact serve the public interest. The burden of proof in any such proceedings will rest on the protesting stations, and Teleprompter will have the opportunity to submit rebuttal evidence.

*So Ordered.*